UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| EMMA GIST | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 10-144-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| THE CITY OF CUMBERLAND et al. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendants. | ) | **ORDER** |
| | ) | |
| | ) | |

*** *** *** ***

This is a case about Emma Gist's pursuit of a business privilege license in the city of

Cumberland and the obstacles she encountered while trying to secure it.  Gist claims that those

obstacles were caused by the multiple defendants and that their actions give rise to claims under

42 U.S.C. §§ 1983, 1981, 1985, and state tort law.  The Defendants include the city of

Cumberland as well as its former mayor, Loretta Cornett, many members of the city council, and

the former chairman of the planning and zoning commission.  Each of the individuals have been

sued in both their individual and official capacities.  The Defendants have moved for summary

judgment [R. 46] and the matter is now ripe for review.  The motion will be granted for the

reasons that follow.

**I.**

In February of 2009, Gist, an African-American, applied for and received a seasonal

temporary privilege license from the city of Cumberland.  This license allowed Gist to operate a

restaurant within the city limits until the end of June, 2009.  Per local ordinance, one could not

operate a restaurant without first obtaining a privilege license.  [R. 73-2 at 5].  Gist, an experienced cook, soon went about the business of opening her restaurant.  Her plan was to use a recreational vehicle as a kitchen and sell barbeque to customers outside.  She rented a parking lot and space in an adjacent building for seating from a local business man, Charlie Duncan.  Soon thereafter, Gist opened her restaurant, "Emma's Little Giant."

Much of Cumberland is located in a floodplain and the city has enacted certain ordinances that local businesses and structures must comply with so that flood destruction is minimized.  [R. 73-6].  On April 6, 2009, Gist was approached by Cumberland's Floodplain Coordinator and told that her business was not in compliance with the Flood Ordinance.  Gist, accompanied by family and friends, attended the next city hall meeting on April 14, in an attempt to find out what she would need to do in order to bring her recreational vehicle into compliance.

According to Gist, she received little guidance at the meeting which devolved into a shouting match between her companions and the council members.  At the meeting, Gist was allegedly told by different councilmembers that they wanted her business "gone now" and that she should "go back to Lynch", a town perceived to be the home of a large minority population, [R. 63 at 52; R.50-1 at 21], to run her business there instead.  Gist left the meeting with little being resolved.

After the meeting, Gist continued to operate and did not close her business.  [R. 63 at 52].  She did not receive notice of any violation of a flood ordinance.  Some time later, on June 15, 2009, Gist arrived at work to find that her water had been turned off.  The water that Gist used was through her landlord's connection.  After some brief inquiry, it was discovered that the water had been turned off due to a delinquent water bill.  Gist went to Mayor Cornett's office and requested that the water be put in her name.  Cornett refused, allegedly stating that she was

2

afraid of impeachment if she did turn the water on. Cornet also stated, however, that she would be able to change the water into Gist's name if provided with a written lease giving Gist rights in the property. Despite this instruction on the proper way to achieve her goal, Gist never tendered a written lease to Mayor Cornett or anyone else in the city. [R. 63 at 78-79]. The water was turned back on a month later when the bill was paid. [*Id*. at 79].

It was also during this period that Gist applied for a permanent privilege license. While her actual application is somehow absent from the record, both Gist and the Defendants agree that Gist applied for a permanent privilege license in June of 2009. [*See* R. 46-1 at 5; R. 50 at 5-6]. She did not receive a prompt answer to her application. While this appears to have frustrated her, it did not dissuade her from continuing to operate. Emma's Little Giant was open from August to December of 2009. [R. 63 at 97]. When Gist stopped operating in January of 2010, it was not because Cumberland or any of its representatives had cited her for any violations or attempted to shut her down, but rather, for personal reasons. [*Id*.; R. 63 at 62-63, 67-69].

It was also during this time that Gist began to receive notice from the city on what was required for her restaurant to comply with the flood ordinance. In December of 2009, Gist's landlord, Charlie Duncan, received a letter from the city citing the specific sections of the ordinance that the structure on Duncan's property, Emma's Little Giant, was violating. [R. 50-1 at 42-43]. In addition, the letter advised Duncan of the necessary steps that could be taken in order to bring Gist's restaurant into compliance. [*Id*.].

Presumably, because Gist's restaurant was a recreational vehicle that had not been moved since opening for business, the letter's recommended steps were geared towards bringing the recreational vehicle into compliance as a permanent structure. After some continued correspondence between Duncan and government officials, it was determined that Gist could

comply with the flood ordinance as a mobile recreational vehicle by following a different set of requirements. [R. 50-1 at 46]. Duncan was advised of the necessary steps in January of 2010. These requirements included moving the vehicle once every 180 days. [*Id.*; R. 73-6 at 24]. Gist complied by disconnecting the water and electricity from her recreational vehicle and driving it around the block a few times in April of 2010. [R. 75-3 at 2; R. 50-1 at 47]. Finally in compliance, Gist applied for and received a privilege license on June 3, 2010. The license was seasonal and renewable every 180 days on the condition that Gist continued to comply with the flood ordinance by moving the vehicle at least once every 180 days. [R. 75-3].

On these facts, Gist brought suit alleging that federal claims exist under 42 U.S.C. §§ 1983, 1981, and 1985. Because the Court disagrees, it will grant summary judgment for the Defendants on all federal claims for the reasons set forth below.

## II.

The Defendants seek summary judgment under FRCP 56. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D.Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

4

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding,* 285 F.3d 415, 424 (6th. Cir. 2002). Moreover, the movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Holding Hall*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Holding Hall*, 285 F.3d at 424 (internal citations omitted).

Finally, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact" and "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). In reviewing a motion for summary judgment, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)).

### III.

Gist makes multiple claims under 42 U.S.C. § 1983. Among them are claims that her rights of procedural due process and substantive due process, both secured by the Fourteenth Amendment, were violated. The basis for these claims lies in the city's inability to grant Gist a

5

permanent privilege license in the summer of 2009.  While the parties make much of other tangential matters that apply in some situations where § 1983 suits are brought, Gist's due process claims here fail because she has not made out a prima facie case.  "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Adams v. Metiva*, 31 F.3d, 375, 386 (6th Cir. 1994).  Here, where Gist does have such a right, she has not been deprived of it, and when it is arguable that she has been deprived of "something", it cannot be said that that "something" is a Constitutional right.

Reading Gist's filings broadly, she has identified three possible Constitutional rights emanating from the Fourteenth Amendment's Due Process Clause: a liberty interest in pursuing one's chosen occupation, a property interest in a privilege license issued by the city of Cumberland, and a property interest in a prompt response to a privilege license application.

## A.

"Generally speaking, freedom to choose and pursue a career, 'to engage in any of the common occupations of life,' qualifies as a liberty interest which may not be arbitrarily denied by the State." *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir. 1983) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).  Based on this, Gist claims that her inability to secure a license in the summer of 2009 qualifies as a deprivation of her liberty interest in pursuing a career.

But the license is only relevant to an occupational liberty interest analysis to the extent that the city used its absence as a reason to stop Gist from running Emma's Little Giant, to stop her from "choos[ing] and pursu[ing] a career."  The record is quite clear that Gist was never issued a citation for lack of a license or forcibly stopped from running her business.  Indeed, she

6

continued to operate in late 2009 without ever encountering any such obstacles.  When she did stop operating in early 2010, it was not because of interference from any of the defendants, but rather for personal reasons.  [R. 63 at 62-63, 67-69, 97].  "[I]it is only where the defendants['] action effectively precludes the plaintiff from practicing his trade with all employers or customers that the plaintiff's liberty interest in pursuing his occupation is infringed."  *Jackson v. Heh*, 215 F.3d 1326 (Table), *6 (6th Cir. 2000).  Here, no such action has been taken, and the primary evidence of this is the very fact that Gist continued to operate in her chosen profession.  In other words, Gist simply has not been deprived from engaging in her chosen field.

Gist also argues that the City's refusal to put the water service in her name after the bill became delinquent was an effective denial of her right to engage in her chosen profession.  This, she argues, is because a lack of running water meant that she could not operate.  While it is certainly true that having running water is essential to operating a restaurant, the Defendants were not the reason that Emma's Little Giant did not have water.  The reason is obvious; the bill was delinquent.  This is true even when viewing the record in the light most favorable to Gist.  While Gist argues that the water should have been put in her name upon the verbal request of her and Duncan, she failed to comply with Cornett's instructions on how to do so: provide a written lease showing that she had an interest in the property.  [R. 63 at 78].

In any event, regardless of whose name the water service was in or should have been in, the fact remains that the service was off because of delinquency and was turned back on once it was paid in the proper manner.[1]  Gist cannot successfully assert that her inability to operate her

---

[1] Gist states that she tendered the delinquency to Mayor Cornett in June of 2009 and that Cornett refused to accept the payment.  [R. 63 at 76-78].  Assuming, as the Court must, that this is true, a deprivation cannot be found on such flimsy grounds.  If so, then one could sue the City after the Fire Chief refuses to accept one's electric bill payment or the City's General Counsel

business during the period when the water was off was due to the action of any of the Defendants.

Thus, Gist has not suffered a deprivation of her liberty interest in choosing her profession. Her § 1983 claim relying on such grounds is properly dismissed.

**B.**

Gist also claims that she has a property interest in the privilege license she applied for in June 2009 and that the city deprived her of her right to the license. The law is clear that in order for one to have a property interest in a license, a "thing", or a "right", the relevant question is whether the individual has a "legitimate claim of entitlement" in the asserted property interest. *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). This requires much more than a unilateral expectation of receiving the "thing" or a hope that one will acquire it; one must truly be entitled to it. *Id.*; *Clair v. Northern Kentucky Ind. Health Dist.*, 504 F. Supp. 2d 206, 212-13 (E.D. Ky. 2006).

A property interest, when it exists, must be found in some other body of law outside the Constitution. "Property interests 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that support claims of entitlement to those benefits.'" *Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (quoting *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Furthermore, when one asserts a property interest in a license or permit one has applied for, the relevant inquiry as to whether the applicant is entitled to that license is "whether the issuance of the permit involved a significant degree of discretion to the extent that a claim of

---

rejects a citizen's payment of his gas bill.

entitlement would not be legitimate." *Clair*, 504 F. Supp. 2d at 212; *see Brown v. City of Ecorse*, 322 Fed. Appx. 443, 445 (6th Cir. 2009) ("If a zoning authority retains discretion to issue or deny a building permit, an individual whose permit application has been rejected has no protected property interest"). The answer, then, to whether Gist had a property right in the privilege license lies largely in the local ordinances and rules of the city of Cumberland and the amount of discretion Cumberland maintained in issuing licenses.

Cumberland Ordinance 426 governs privilege licenses in the city.  The majority of the ordinance is a table detailing the amounts an applicant must pay, depending on the type of business one seeks to operate, in order to gain a license.  The ordinance does provide some guidance on what the approval process entails:  "Each application shall be approved by the Mory [sic] or City Clerk prior to the business beginning activity.  If the Mayor or City Clerk rejects the said application the applicant may request the City Council to review the decision and take appropriate action."  [R. 73-2 at 5].  Thus, the ordinance delegates initial decision making authority in the mayor *or* the city clerk.  However, the ordinance does little in the way of outlining what considerations either of the decision-makers should weigh when considering an application.

A review of the actual application provides some further guidance.  By applying, an applicant "agree[s] to operate the above described business in accordance with all regulations and conditions imposed by the Commonwealth of Kentucky and the laws, ordinances and regulations of the City of Cumberland."  [R. 73-3 at 2].  Furthermore, the applicant is advised that they will be notified as to a decision on their application "[u]pon completion of actions by the reviewing committee" and that "[t]his normally will take seven (7) days."  [*Id*.].  It appears then, that the application provides notice that in order to obtain and maintain a license, an

9

applicant must be in compliance with all relevant laws, including the ordinances of Cumberland.

But providing notice to an applicant that approval of their application is conditional on complying with all ordinances is different from notifying an applicant that a decision on their application will be based on some policy discretionary grounds. A conditional grant of a license is very different than a discretionary grant of a license. A discretionary license decision is the type of decision made when an entity approves or rejects applicants for things like liquor licenses, *Applicants for Retail Package Liquor Licenses in Floyd County v. Gulley*, 674 S.W.2d 22, 26-27 (Ky. App. 1984), building permits, *Brown*, 322 Fed. Appx. at 445, or health code permits, *Clair*, 504 Fed. Supp. 2d at 213. In each of those cases, an expert or policy maker was called on to approve an application based on policy or expertise grounds.

Here, there is no similar discretion given to the mayor or city clerk. Instead, the application's approval seems to be based on three things: 1) whether the applicant has correctly and completely filled out the application, 2) whether the applicant has complied with all relevant laws and ordinances, and 3) whether the applicant paid the required fee. Thus, an applicant could rightly expect that they would receive a license so long as they complied with the above conditions. In other words, an applicant would have a "legitimate claim of entitlement" in receiving the license. The Sixth Circuit contemplated such a right when it stated in a similar situation that "a property interest would exist . . . if the board's discretion were so circumscribed that approval of the plaintiff's proposed use of the property became mandatory once [the applicant] complied with the minimal requirements imposed on him." *City of Ecorse*, 322 Fed. Appx. at 445.

Finally, the very fact that both the mayor *and* the city clerk have authority to make an initial decision on an application lends credence to the conclusion that there is no discretion in

the issuance of a license.  If the issuance of licenses was based on some discretionary comprehensive scheme, then it would make little sense to confer decision-making authority in two very different municipal administrators.  Therefore, based on a review of the relevant local law, the Court must conclude that applicants for privilege licenses in Cumberland do have a property interest in the license once they satisfy each of the relevant conditions.

This conclusion does not end the inquiry, however.  Finding that a property right exists in the abstract is not enough; Gist herself must have such a right.  This is where her claim fails.  Not only is the existence of a property right determined by a review of state and local law, but so too are the bounds of that right.  *See Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  When reviewing the local ordinance and the license application, it is plain that the right to a license does not vest within any specific time period after the application.  The application states that a decision "normally" occurs within seven days of applying.  [R. 73-3]. While this language may be enough to give rise to a hope of receiving a license in that time frame, it does not create an entitlement in receiving one in that period.

Gist's particular application was unique.  She was seeking to operate a restaurant out of a recreational vehicle that was permanently placed in one location.  As a result, ensuring that her business would comply with the flood ordinance presented an issue that was outside the "normal" range.  Therefore, it makes sense that issuing the license after confirming compliance would also take more than the "normal" amount of time.  Furthermore, as Gist herself admits, there was "no official denial of her requests and/or applications."  [R. 50 at 5].  The City never told her "no."

Therefore, while city officials lacked discretion in deciding whether to issue Gist a license, they were acting within their rights and pursuant to their duties to ensure that the

necessary conditions of approval had been satisfied. Indeed, this is exactly what they did in December of 2009 when they sent a letter to Gist's landlord advising him of the necessary steps Gist would have to take in order to comply with the local flood ordinance. Gist responded by choosing to comply with the ordinance in another way, proved this compliance to the mayor, and ultimately received a license in June of 2010. During this time, Gist's right to a license had not yet vested because she had not yet satisfied the conditions of acquiring it. As such, she had no Constitutionally-protected property interest.

Gist also seems to argue that not only was she was entitled to a license, but also that she was entitled to a decision on her application quickly after applying. Gist states that she "was entitled to have her application for a privilege license either granted or denied on the basis of specific non-compliance" but cites no authority supporting a finding of such an entitlement. [R. 50 at 14]. The local ordinances and rules of Cumberland control whether such an entitlement existed, *see Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006), and they do not support finding one is present here. To the extent that Gist was deprived of a quick decision on her application, this is immaterial as a review of local law shows that she was not entitled to one.

There was nothing in the ordinances or local rules requiring the city to issue quick decisions on privilege licenses, only a sentence that they are "normally" issued within seven days. If an applicant presents the city with a unique set of facts that requires investigation, the applicant cannot then complain that the investigation is taking longer than normal. The applicant is comparing her own unique situation with a run-of-the mill application. This would be similar, in kind if not in degree, to a registrant at the DMV bringing a § 1983 suit because he was asked to fill out an extra form to register his classic car. The classic car owner in this example had no

right to receive his registration in the same amount of time and with as few forms as those registering normal cars, only a hope that his application process would be similar. The same is true for Ms. Gist.

Based on the foregoing analysis, Gist never obtained a right in receiving a privilege license prior to when she actually did receive one in June of 2010. Similarly, she never obtained a property interest in a quick decision on her application. Thus, it cannot be held that she was ever deprived of a property interest and dismissal of her § 1983 due process claims based on such a finding is appropriate.

## IV.

Gist's final § 1983 claim alleges that her Fourteenth Amendment right to equal protection was violated. The Equal Protection Clause requires that states do not "deny to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "It is essentially 'a direction that all persons similarly situated should be treated alike.'" *Howard v. City of Southfield*, 97 F.3d 1452 (Table), *5 (6th Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Gist alleges that because she is an African-American, she was required to go through steps to obtain a license which others were not. In other words, Gist claims that the conditions imposed on applicants by the application process as outlined above were not enforced against others; they were enforced only against her because of her race.

Gist's claim is essentially a selective enforcement claim. To establish a prima facie selective enforcement claim relying on the Equal Protection Clause, one must satisfy three elements:

> First, [the state actor] must single out a person belonging to an

13

> identifiable group, such as those of a particular race or religion . . .
> for prosecution even though he has decided not to prosecute
> persons not belonging to that group in similar situations.  Second,
> he must initiate the prosecution with a discriminatory purpose.
> Finally, the prosecution must have a discriminatory effect on the
> *group* which the defendant belongs to.

*Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997) (citation omitted).  Here, Gist

alleges that the individual enforcing the ordinance[2], Mayor Cornett, singled her out because of

her membership in an identifiable racial group, African-Americans.  She fails to satisfy the first

element, however, because she has not adequately identified other similarly situated persons who

are not African-Americans who applied for licenses and were not required to satisfy the relevant

conditions.

When considering whether a plaintiff has satisfied the elements of a selective

enforcement claim, "there is a strong presumption that the state actors have properly discharged

their official duties, and to overcome that presumption the plaintiff must present clear evidence

to the contrary."  *Daubenmire v. City of Columbus*, 507 F.3d 383, 390 (6th Cir. 2007) (citation

omitted).  Indeed, the standard a plaintiff must meet "is a demanding one."  *Id.*  In an attempt to

do so, Gist directs the Court's attention to the depositions of Norma Bowyer, Donald Disney,

Robin Smith, Eugene Stagnolia, Carl Hatfield, and Yvonne Gilliam.  Each of these deponents

were either Cumberland council members, the city clerk, or Chairman of the Planning and

Zoning Commission.  [R. 50 at 2-3].  Gist relies on these deponents' testimony to conclude that

"[p]rior to this case, . . . no privilege permits had ever been denied."  [*Id.*].  A review of the

---

[2] Gist alleges that each of the defendants are liable based on equal protection grounds, but only Cornett as mayor and the city clerk (who is not a defendant) had the authority to approve or reject her application in the first instance.  *See supra* Part III, B.  In other words, Cornett was the only individual acting as a state actor in requiring Gist to meet the necessary conditions of license approval.

14

deposition testimony does not support this conclusion.

While it is true that many of these deponents disavow any personal knowledge of any privilege license rejections, none of them, other than City Clerk Robin Smith, were in a position to approve them.  *See supra* Part III, B.  As a result, their testimony is not compelling.  They were not in a position to know what was happening with the application process.  Asking them to identify how many applicants were rejected is akin to asking them how many speeding tickets are given out within city limits.  In other words, testimony from city councilmembers about license applications is not persuasive because they did not have any authority, and therefore no occasion to gain actual knowledge, when it came to license applications.

The city clerk, Robin Smith, did have some authority under local ordinance.  Nonetheless, her testimony is also underwhelming on this point.  She testified that she was not aware of anyone being rejected for a privilege license who had applied for one.  More importantly, however, she testified that when an applicant applied for a license to run a business in the floodplain, as Gist did, that the mayor handled it and that she had no knowledge of what steps were taken after the application's review was taken over by Cornett.  [R. 68 at 10-11].  Thus, the testimony relied on by Gist is largely immaterial as to the approval rate and process required of applicants that were similarly situated to Gist.  It is not the type of "clear evidence" required to overcome the "strong presumption that the state actors have properly discharged their official duties."  *Daubenmire*, 507 F.3d at 390.

Because of this, Gist's selective Equal Protection claim must fail.  She has not sufficiently identified other specific applicants outside her class.  Equally importantly, her vague references to other applicants does little to prove that they were "similarly situated" to her insofar as they were either applying to operate in a flood zone or presented a unique question

under Cumberland's ordinances in the way that an RV restaurant does.  Ultimately, these failures

doom her selective enforcement claim.  "[I]t is an *absolute requirement* that the plaintiff make at

least a prima facie showing that similarly situated persons outside her category were not

prosecuted."  *Stemler*, 126 F.3d at 873 (emphasis added).  Thus, summary judgment in favor of

the Defendants on Gist's § 1983 Equal Protection claim is appropriate.

## V.

Gist makes three claims based on 42 U.S.C. § 1981.  Two of those claims are very similar

to Gist's Equal Protection claims.  First, Gist claims that Cornett is liable under § 1981 for

"denying Gist the full and equal benefit of all laws as are enjoyed by white persons in the City of

Cumberland relative to her direct handling of the privilege permit application."  [R. 50 at 15].

Second, she alleges that all of the named defendants are liable for "denying [her] the full and

equal benefit of all laws as are enjoyed by whited persons in the City of Cumberland relative to

their failure to resolve the dispute between the Mayor and Gist regarding the privilege license."

[*Id*.].  For both of these claims, Gist relies on the statutory language ensuring her the right "to the

full and equal benefit of all laws and proceedings for the security of persons and property as is

enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).

The Sixth Circuit has stated that "[t]he 'security of persons and property' language limits

the potential class of cases that may be brought under the equal benefit provision.  A litigant

must demonstrate the denial of the benefit of a law or proceeding protecting his or her personal

security or a cognizable property right."  *Chapman v. Higbee Co.*, 319 F.3d 825, 832 (6th Cir.

2003).  Gist's "equal benefit" claims simply fail to meet either requirement.  There is no

allegation connecting Gist's predicament with her personal security and she had no property

right in a privilege license until she satisfied each of the conditions to acquire one, which she

immediately did so acquire, in June 2010.  *Supra* Part III, B.  As a result, summary judgment in favor of the Defendants on both of Gist's § 1981 equal benefit claims is appropriate.

For different reasons, the same is true of Gist's remaining § 1981 claim.  She alleges that Cornett is liable "for denying Gist the benefit of her contractual rights to the leased property." [R. 50 at 15].  Gist relies on § 1981's provision that all persons within the United States' jurisdiction shall have the same right "to make and enforce contracts" as white citizens.  42 U.S.C. § 1981(a).  In this context, "make and enforce contracts" includes one's "enjoyment of all benefits" of a contractual relationship.  42 U.S.C. § 1981(b).  Gist's argument, then, is that Cornett denied her the benefit of her contractual relationship with her landlord Duncan by failing to meet Gist's expectations once her water was turned off in June of 2009.

"Any claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship,' under which the plaintiff has rights."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).  Gist points to her unwritten lease with Duncan as the relevant "contractual relationship."  While the exact rights Gist received under this lease are absent from the record, the Court will assume, for the purposes of the following analysis, that those rights included the benefit of water service from Duncan.  The fact that these rights were disturbed is not enough to establish liability.  Gist must adequately prove that Cornett somehow impaired them.  Even when reviewing the record and drawing all reasonable factual inferences in Gist's favor, it is plain that she has failed to do so.

Gist concedes that her service was shut off because her water bill "was significantly delinquent."  [R. 50 at 16].  Cornett did not impair Gist's rights then by turning the water off. This was caused by the delinquency.  Gist alleges that Cornett impaired her rights by refusing to put the water service in Gist's name which presumably would have allowed for the water to be

turned back on.[3]  Gist acknowledges however, that Cornett advised her of the necessary step to change the name on the water service (provide a written lease) and that Gist never complied.  [R. 63 at 78].  In addition, Gist alleges that Cornett refused to accept her payment of the delinquency when she asked if she could pay Cornett personally.  [R. 63 at 76].  Because the current litigation is at the summary judgment stage, the Court must draw all inferences in Gist's favor, as she is the non-movant, but those inferences Gist is entitled to are only those that are *reasonable*.  *See Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party").

Here, neither party has provided any information in the record that proves whether a mayor in the city of Cumberland has an official duty to personally accept water bill payments.  Because the Court thinks it unreasonable that a mayor would be required to do so, the Court finds that Gist's claim relying on the finding of such an official duty is baseless.  Stated another way, the Court is unwilling, without some proof in the record to the contrary, to impose a duty on a city's mayor to personally accept her citizens' utility bill payments in order to avoid liability under 42 U.S.C. § 1981.

Consequently, summary judgment in favor of the Defendants on each of Gist's § 1981 claims is proper.

## VI.

Gist's final federal claim is that the Defendants conspired, in violation of 42 U.S.C § 1985, to deprive her "either directly or indirectly . . . of the equal protection of the laws, or of equal protection of the laws, or of equal privileges and immunities under the laws."  [R. 1 at 15].

---

[3] It is unclear from the record whether changing the name of the individual who receives water service at a particular address could be done without first satisfying any delinquency.

18

A prima facie § 1985 case must allege the following four elements:

> [t]hat the defendants did (1) conspire or go in disguise on the highway or on the premises of another (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.  It must then assert that one or more of the conspirators (3) did, or caused to be done, any act in furtherance of the object of the conspiracy, whereby another was (4a) injured in his person or property or (4b) deprived of having exercising any right or privilege of a citizen of the United States.

*Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971) (internal quotations omitted).  Gist fails to make a prima facie case because of the fourth element, injury to property or other deprivation, is lacking.

When determining whether such an injury or deprivation is present, it is important to note that "[t]he rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere." *United Broth. Of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983).  Here, Gist alleges that those rights are found in the due process and equal protection clauses of the Fourteenth Amendment.  [*See* R. 1 at 15].  But as stated above, Gist's equal protection rights were not violated because she failed to meet the prima face elements of a selective enforcement claim.  *Supra* Part IV.  Similarly, Gist's due process rights were not violated because she never suffered a deprivation to any valid liberty or property interests.  *Supra* Part III.  Thus, she has not been injured in her property or deprived of exercising other rights.

Because she failed to satisfy the elements of a valid § 1985 claim, Gist's claim cannot withstand the Defendants' motion.  Hence, it is properly dismissed.

## VII.

In addition to the federal claims brought by Gist, she also brought supplemental state law claims of Defamation of Business Interest and Intentional Infliction of Emotional Distress.  [R.

19

1].  The Defendants argued that in the event they won summary judgment on each of the federal claims, as they have, that the Court should decline to exercise jurisdiction over the remaining state law claims.  [R. 46-1 at 39].  28 U.S.C. § 1367(c)(3) provides, in relevant part, that "district courts may decline to exercise supplemental jurisdiction over a [supplemental state law] claim if – the district court has dismissed all claims over which it has original jurisdiction."  The key word in the statutory text, of course, is the word "may."  Thus, it is clear that the Court has discretion in choosing whether to exercise jurisdiction over the supplemental claims.

The Sixth Circuit has provided guidance on how district courts should exercise that discretion.  "[G]enerally, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.  A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."  *Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (internal quotations and citations omitted).

In the Sixth Circuit, however, "courts have minimal discretion to decide pendant state law claims on the merits once the basis for federal jurisdiction is dismissed before trial." *Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047, 1055, (6th Cir. 1986).  It is only when there are "overwhelming interests in judicial economy" that it would be proper for a district court to exercise its discretion and retain jurisdiction over the supplemental claims.  *See id.* ("[I]n certain cases, the overwhelming interests in judicial economy may still allow a district court to properly exercise its discretion and decide pendent a state law claim once the federal claim is dismissed before trial").  Here, the Court is not convinced that those "overwhelming interests" exist.

Furthermore, it appears that Gist's only objection to the Court declining jurisdiction is

based on a misunderstanding of the law.  Gist argues that because "Kentucky's statute of limitations has now run on Ms. Gist's claims, a dismissal of her pendant claims, too, would completely cut off Ms. Gist's right to have her day in court."  [R. 50 at 29].  A review of the supplemental jurisdiction statute shows this fear to be unfounded.  It states that "[t]he period of limitations for any [supplemental state law claim] . . . after the dismissal of the [supplemental state law claim] shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  28 U.S.C. § 1367(d).  In other words, Gist shall have at least thirty days in which to file her state law claims in state court without fear of running afoul of the relevant statutes of limitations.

It appears that Gist may have actually preferred this result if she was aware of the section outlined above.  Gist states that, but for her fear of losing her claims because of the statutes of limitations, she "would have little objection to having the case remanded in the event of the dismissal of her federal claims."  [R. 50 at 29].

Because it appears that both parties are in agreement that they would prefer to litigate the remaining claims in state court, and more importantly, because the Court does not think there are overwhelming concerns of judicial economy present, the Court will also dismiss Gist's state law claims, without prejudice, so that she may bring them in state court.

## VIII.

For the reasons above, it is hereby **ORDERED** as follows:

1.      Summary judgment for the Defendants is appropriate and their motion [R. 46] is hereby **GRANTED**;

2.      Gist's claims arising under 42 U.S.C. §§ 1981, 1983, and 1985 are **DISMISSED WITH PREJUDICE**;

3.      Gist's state law claims are **DISMISSED WITHOUT PREJUDICE**;

4.      The pre-trial conference and jury trial in this matter are **CANCELLED**;

5.      A separate judgment consistent with this Order shall be entered

contemporaneously herewith; and

6.      This is a **FINAL** Order.

This, the 23rd of February, 2012.

Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**